**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

IN THE MATTER OF:
IN THE COMPLAINT OF TERRY KATZ,
AS OWNER OF A 29 FOOT 2013
CHAPARRAL 287 SSX BOW RIDER,               **REPORT AND RECOMMENDATION**
Bearing Hull ID Number: FGBB0134E313, for
Exoneration from or Limitation of Liability.          **18-CV-01769 (DG) (ST)**


------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

On December 4, 2017, Joy Jellinek and Alfred Jellinek ("Jellineks" or "Claimants")

initially filed a maritime personal injury action against Terry Katz and Jennie Katz in the

Supreme Court of the State of New York, Nassau County.  Subsequently, on March 22, 2018,

Terry Katz ("Katz" or "Petitioner") filed a Complaint for Exoneration and Limitation of Liability

in the United States District Court for the Eastern District of New York under this Court's

admiralty and maritime jurisdiction.  Now before this Court are: (1) Jellineks' Motion for

Summary Judgment; and (2) Katz Cross-Motion for Summary Judgment.

The Honorable Diane Gujarati referred the Motion and the Cross-Motion for Summary

Judgment to the undersigned to issue a Report and Recommendation.

For the reasons stated below, this Court respectfully recommends that: (1) Jellineks'

Motion for Summary Judgment be denied; and (2) Katz's Cross-Motion for Summary Judgment

be denied.

## I.    BACKGROUND

### A.  Factual Background

Katz, an individual male, is a resident of Nassau County, New York.  Compl., Ex. A ¶ 2, DE 1.  Katz is also the owner of a 29-foot 2013 Chaparral 287 SSX Bow Rider ("Vessel").  *Id*. ¶ 3.

The Jellineks are a married couple who reside in Nassau County, New York.  *Id*. ¶ 1.

On September 4, 2017, Katz and his wife, Jennie Katz, invited the Jellineks and various other couples to their house in Bellmore, New York.  *See* Jellineks' Mot., Mem. of Law at 5; Katz's Rule 56.1 St. ¶ 32.  Everyone arrived around 9:00 a.m. or so.  Katz's Rule 56.1 St. ¶ 32. At around 10:00 a.m. or 11 a.m., all the couples departed in the Vessel from the Bellmore house to spend the afternoon on a beach on Fire Island.  *Id*. ¶ 35.  Katz owned and operated the Vessel, and the Jelleniks, among others, accompanied as passengers.  Compl. ¶ 6.

After spending the afternoon on Fire Island, at around 6:00 p.m., Katz began the journey back from Fire Island to Bellmore.  Katz's Rule 56.1 St. ¶ 45.  On the way back, Katz admittedly missed a right turn from one of the navigational buoys and traveled approximately 2.8 nautical miles or so away from the chosen route.  *Id*. ¶ 56; Jellineks' Reply to Katz's Rule 56.1 St. ¶ 54. Resultingly, the Vessel went aground into shallow waters, which were only a few feet deep.  *See* Jellineks' Mot., Mem. of Law at 7; Katz Rule 56.1 St. ¶ 56.  Even though the Vessel was equipped with a GPS navigational system, admittedly, Katz did not always rely on the GPS because he had operated the Vessel to and from Fire Island approximately twenty (20) to twenty-five (25) times and was familiar with the different routes.  *See* Katz Rule 56.1 St. ¶ 2, 20; Jellineks' Mot, Katz's. Dep. Tr. Ex. B1.  The GPS provided information as to marked water channels where the Vessel could operate safely without grounding.  *Id*.  Similarly, Katz did not

2

utilize the nautical charts that would have also identified such marked channels. *See* Jellineks'

Mot., Katz's Interrogatory Response ¶ 4, Ex. C.

As a result of the grounding, the Vessel was stuck. Katz Rule 56.1 St. ¶ 66.   By way of

admission, Katz turned off the engine at that point. *See* Jellineks' Mot, Katz's. Dep. Tr. Ex. S3.

Katz then called Sea Tow for assistance and informed them that his Vessel was stuck.  Katz Rule

56.1 St. ¶ 70.   Sea Tow advised him to put out his anchor and wait for help. *Id*.   It started

getting dark as the sun went down and Katz testified that the "girls" got a little hysterical. *See*

Jellineks' Mot, Katz's. Dep. Tr. Ex. S3.  At that point, given the weather conditions, lack of

daylight, and growing anxiety amongst the passengers, Katz made a conscious decision to steer

the Vessel towards Sore Thumb Beach ("Beach"). Katz's Rule 56.1 St. ¶ 73.  Because his

Vessel was stuck, he began using waves to maneuver his Vessel to the Beach shore. *See* Katz's

Responses to Interrogatories, Ex. C ¶10.

The Vessel almost capsized as it approached the Beach. *See* Jellineks' Rule 56.1 St. ¶

124; Dep. Tr. of Jennie Katz at 55; Dep. Tr. Lawrence Knoll at 39; Dep. Tr. of Risa Press at 24;

Dep. Tr. of Gary Press at 25, Ex. L4.  As the Vessel approached the Beach, some passengers

began jumping off while the Vessel was still moving and was approximately four (4) feet from

the Beach. *See* Jellineks' Rule 56.1 St. ¶ 125; Dep. Tr. of Jennie Katz at 55; Dep. Tr. Lawrence

Knoll at 40; Dep. Tr. of Risa Press at 24, Ex M4.  The passengers jumped off the Vessel while it

was moving because they were anxious and scared. *Id*.

The Jellineks sustained injuries while they disembarked from the Vessel.  It is not clear

whether the Jellineks jumped off the Vessel while it was moving.  More specifically, when Mr.

Jellinek disembarked from the Vessel, his right thigh struck the side of the Vessel and he

sustained injuries.  Katz's Rule 56.1 St. ¶¶ 80-81; Jellineks' Rep. to Katz's Rule 56.1 St. ¶¶ 80-

81.  Mr. Jellinek claims that in lieu of jumping off, he was "thrown off the Vessel, into the air, due to the vessel bucking up from the movement of the water, and then landing back on the boat, and then being washed off the side of the vessel and out into the sea because the deck of the vessel was wet."  *Id.*  As to Mrs. Jellinek, she sustained injuries when she jumped from the Vessel into the shallow waters.  *See* Jellineks' Rule 56.1 St. ¶135; Katz Rule 56.1 St. ¶ 83; Jellinek's Reply to Katz's Rule 56.1 St. ¶ 83.

The Jellineks retained Captain Kenneth Wahl as a maritime expert, who teaches Marine Safety and Navigational Skills to recreational boat operators.  Jellineks' Mot., Mem of Law at 9-10.  Captain Wahl inspected Katz's Vessel and opined that Katz did not operate it in accordance with the standards of good seamanship because he missed the right turn at the buoy, failed to stay in a marked channel, did not plan his route, did not follow the GPS or use nautical charts, did not deploy his anchor properly, and failed to properly instruct his passengers on how to leave the Vessel.  *Id*.

Katz retained Thomas E. Danti as a maritime expert, who is the Dean of the Chapman School of Seamanship, and, like Captain Wahl, also teaches seamanship to recreational boaters.  Katz' Rep. at 6.  Danti concluded that Katz was prudent in operating the Vessel under the circumstances and that the Jellineks left the Vessel improperly and assumed the risks when they jumped off.  *Id*.

Police Officer Raymond Harkins of the Suffolk County Police Department Marine Bureau completed an incident report wherein he concluded that Katz's "operational inexperience" was a contributing factor towards the incident.  Jellineks Rule 56.1 St. ¶ 146; Katz Rep to Jellineks' Rule. 56.1. St. ¶ 146.

4

### B.  Procedural History

On December 4, 2017, the Jellineks originally filed a personal injury action against Katz in the Supreme Court of the State of New York, Nassau County.  Compl., Ex. 4.  This action was stayed when Katz filed the instant Complaint on March 22, 2018, for Exoneration and Limitation of Liability pursuant to 46 U.S.C. § 30505 et. seq., in the United States District Court for the Eastern District of New York.  *See generally* Compl.  Both parties moved for summary judgment.  DE 67, 68.

## II.    JURISDICTION

This action is brought under admiralty and maritime jurisdiction of the United States District Court pursuant to Article III of the United States Constitution, 28 U.S.C.A. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure.

## III.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."  *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).  Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as

mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

## IV.    DISCUSSION

A petition for exoneration from or limitation of liability to the value of the vessel is an admiralty right granted to a vessel owner by a federal statute. 46 U.S.C. § 30505 et. seq. The Limitation Act "creates 'a form of action peculiar to the admiralty and maritime context,' allowing the owner of a vessel seeking total exoneration or limitation of liability for 'damages caused by the negligence of his captain or crew.'" *In re Nagler,* 246 F.Supp.3d 648, 655-56 (E.D.N.Y. 2017) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243–44 (2d Cir. 2014)); *see also* Fed. R. Civ. P. Suppl. Rule F.

Instead of being vicariously liable for the full extent of any damages caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited to the value of the ship unless the owner himself had 'privity or knowledge' of the negligent acts. 46 U.S.C. §§ 30505(a)–(b); *Otal Investments Ltd. v. M/V CLARY*, 673 F.3d 108, 115 (2d Cir. 2012); *In re City of New York*, 522 F.3d 279, 283 (2d Cir. 2008)). "Privity or knowledge," implies some degree of culpable participation or neglected duty on the boat owner's part. *In re Nagler,* 246 F.Supp.3d at 660.

In arriving at a decision in a limitation proceeding, the court undertakes a two-part analysis: first, to determine whether there are any "acts of negligence or unseaworthiness [that]

caused the casualty", and second, to determine whether the ship owner had knowledge or privity of those same acts of negligence. *In re Bridge Const. Services of Florida, Inc*., 39 F.Supp.3d 373 (S.D.N.Y. 2014); *Otal Investments Ltd.*, 673 F.3d at 108 (2d Cir. 2012). The claimant "bears the initial burden of proving negligence," after which the burden shifts to the vessel owner to "prove lack of knowledge or privity." *Id*. at 115 (quoting *In re Moran Towing Corp*., 166 F. Supp. 2d 773, 775 (E.D.N.Y. 2001)); *see also In re Complaint of James Miller Marine Service Inc.*, 2003 A.M.C. 1777, 1779 (S.D.N.Y. 2003).

A ship owner may succeed on summary judgment to limit liability either by demonstrating that no issue of material fact exists as to the claimant's allegation of negligence, or by demonstrating that, even if there is a genuine issue of material fact as to the issue of negligence, no issue of material fact exists as to the ship owner's lack of privity or knowledge of the alleged negligence. *In re Nagler,* 246 F.Supp.3d at 660; *Otal Investments Ltd*, 673 F.3d at 115.

### A.  Negligence

At the first step of a limitation-of-liability proceeding, a court determines whether the vessel owner is entitled to limitation by inquiring into whether there were any "acts of negligence or unseaworthiness [that] caused the casualty." *In re Nagler*, 246 F.Supp.3d at 657.

"In admiralty cases, federal maritime law applies where it exists." *Becker v. Poling Transp. Corp*., 356 F.3d 381, 388 (2d. Cir. 2004) quoting *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993) (citations omitted). In the Second Circuit, federal maritime law incorporates common law negligence principles generally, and New York law in particular. *In re Treanor*, 144 F.Supp.3d 381, 388 (E.D.N.Y. 2015) (citing *Cornfield v. Cornfield*, 156 Fed. Appx. 343, 344 (2d Cir. 2005)); *In re Bridge Constr. Servs.*, 39 F.Supp.3d at

382 ("In a limitation of liability proceeding, 'the elements to establish a claim of negligence

under maritime law are the same as the elements of negligence under common law.'" (citations

omitted)).  To prevail, the burden is on the claimant to establish a duty, breach of duty, causation,

and damages.  *Nasser v. Port Imperial Ferry Corp*., 19-CV-0845(EK) (ST), 2022 WL 90846

(E.D.N.Y. Jan. 6, 2022); *see also*, *In re Treanor*, 144 F. Supp. 3d at 385 (maritime case); *In re

Bridge Constr. Servs*., 39 F.Supp.3d at 383.

Here, it is undisputed that Katz owed a duty of care to his passengers including the

Jellineks.  At issue is: (1) whether Katz was subject to a heightened standard of care; (2) whether

Katz breached his duty of care; (3) whether Katz's alleged breach of duty was the cause of the

Jellineks' injuries; and (4) whether any presumption of negligence applies against Katz.

### 1.  Katz Owed a Reasonable Duty of Care to the Jellineks

It is well settled that the standard of care a vessel owner owes to a guest is that of

reasonable care under the circumstances of each case.  *Kermarec v. Compagnie Generale

Transatlantique*, 358 U.S. 625, 632 (1959); *see In re City of New York*, 522 F.3d at 283.

"Although some older cases called for a higher degree of care aboard ship, it is now clear in this

circuit that the appropriate standard is one of reasonable care under the circumstances."

*Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64-65 (2d. Cir. 1988).  The degree of

reasonable care necessary on the ship is determined by the extent to which the circumstances

surrounding the particular maritime travel in question are different from those encountered in

daily life.  *Palmieri v. Celebrity Cruise Lines, Inc*., No. 98 Civ. 2037 LAPHBP, 1999 WL

494119 at 3 (S.D.N.Y. July 13, 1999).  "Consistent with these principles, a shipowner is not an

insurer of its passengers' safety."  *Monteleone* 838 F.2d at 65; *Moore v. American Scantic Line,*

*Inc.*, 121 F.2d 767, 768 (2d Cir.1941).  There must be some failure to exercise due care before liability may be imposed.  *Id.*

Thus, Katz, as an owner and operator of the Vessel, owed a reasonable duty of care to the Jellineks.

### 2.    The Assessment of Katz's Reasonableness is a Question of Fact

Katz argues that he did not breach his duty of care that he owed to his fellow passengers. Jellineks argue that Katz breached his duty of care by operating the Vessel negligently.

"Under well-established principles of Second Circuit maritime negligence law, an owner breaches his or her legal duty of reasonable care by failing to take simple precautions to prevent foreseeable and serious injury." *Treanor*, 144 F.Supp.3d at 389 (citing *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947)).  Essentially, "[t]he test is, could the [incident] have been prevented by the exercise of ordinary care, caution and maritime skill?" *In re Bridge Constr. Servs.*, 39 F.Supp.3d at 383 (quoting *The Jumna*, 149 F. 171, 173 (2d Cir. 1906)); *see generally Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994) ("Reasonable care is determined in light of whether or not a particular danger was foreseeable.").

To prove negligence and meet their initial burden, the Jellineks rely on their expert's testimony to argue that Katz was negligent in operating the Vessel because he made an error in navigation that required the Vessel to deviate from its original course; that Katz drove the Vessel aground in shallow water in an area designated as "unsurveyed" on the National Oceanic and Atmospheric Administration nautical chart; and that as a result of the grounding of the Vessel, the Jellineks' sustained injuries when they were forced to jump off the Vessel because it almost capsized as it approached the Beach.  *See* Jellineks Mot. at 2.

To the contrary, Katz relies on his expert's testimony to argue that he was not negligent in his operation of the vessel; and that he acted prudently under the circumstances to operate the Vessel to ensure the safety of all passengers. Katz's Rep. at 6. Katz testified that he had operated the Vessel to and from Fire Island approximately twenty (20) to twenty-five (25) times, usually taking about three (3) to four (4) boating trips a season either with family and friends; that he was very familiar with the route and would not always use the GPS as his sole navigational aide; that on the day of the incident, he missed a turn and upon realization, acted prudently to beach the Vessel to ensure the safety of all passengers; and that it not foreseeable that over an hour after making this wrong turn, the Jellineks would jump off the Vessel and sustain injuries. *See* Katz' Mot. at 1; Katz Rule 56.1 St. ¶ 4. It is also undisputed that the Jellineks were passengers on the subject Vessel, when it was operated by Katz, on at least four (4) occasions prior to September 4, 2017, without incident, during the summers of 2015, 2016, and 2017. *See* Katz Rule 56.1 St. ¶ 20; Jellineks' Rule 56.1. St. ¶ 20.

Based on the evidence presented, there is a genuine issue of fact as to whether Katz breached his duty of care under the circumstances. *See* e.g., *In re Re*, No. 07-CV-223 (JFB) (MLO), 2008 WL 4069747 at 5 (E.D.N.Y. Aug. 27, 2008). A "genuine" issue of fact exists when the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giordano v. City of New York*, 274 F.3d 740, 746–47 (2d Cir.2001). In this case, there is a triable issue of fact with respect to whether Katz was reasonable under the circumstances while operating the Vessel because both parties have adduced sufficient evidence to survive summary judgment on the negligence claim. "While a claim of negligence does not preclude the granting of summary judgement, courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of

fact 'in all but the most extreme situations.'" *Nasser*, 2022 WL 90846 at 4 (quoting *Ortiz v. Rosner*, 817 F.Supp. 348, 350-51 (S.D.N.Y.1993)); *Palmieri v. Celebrity Cruise Lines, Inc.*, No. 98 Civ. 2037 (LAP) (HBP), 1999 WL 494119 at 3 (S.D.N.Y. July 13, 1999)"); *see also Deykina v. Chattin*, No. 12-CV-2678, 2014 WL 4628692, at 7 (E.D.N.Y. Sept. 16, 2014) (denying summary judgment where the "parties' expert reports provide differing assessments of whether the handrail, riser height, and tread depth of the stairs violate accepted engineering practices…"); *In re Livolsi*, No. 3:03–CV–1763 (EBB), 2005 WL 3675967 at 5 (D. Conn. Mar. 5, 2022) (denying summary judgment because there were "genuine issues if material fact" as to whether the petitioner's responsive maneuvers constituted negligence; whether negligently altered the seat of the boat; whether he negligently failed to warn the claimant; and whether he negligently operated the boat).

Based on the testimony of the respective expert witnesses alone, there is a clear factual dispute about whether Katz's operation of the Vessel was negligent in missing the navigational buoy, failing to use a GPS or navigational charts to plan his route, disregarding Sea Tow's advice to put out his anchor and wait for help, making a choice to instead attempt to move the vessel to the beach, and failing to advise the passengers not to leave the vessel while it was still in motion. A reasonable jury could conclude that Katz failed to exercise due care under the circumstances. A reasonable jury could also conclude, in reliance on the testimony of Katz's expert witness, that his actions were reasonable under the circumstances given his past experience in operating the Vessel along the same route without using a GPS or navigational charts and the lack of foreseeability that passengers would decide to jump off the Vessel while it was still moving while being only a few feet away from the Beach.

Thus, this Court determines that the Jellineks' Motion and Katz's Cross-Motion for Summary Judgment should be denied because that there is a genuine issue of fact as to whether Katz acted reasonably under the circumstances.

### 3. Causation

Katz argues that the grounding of the Vessel was not the cause of the Jellineks' injuries. The Jellineks argue that Katz's initial grounding of the Vessel became the cause of their injuries.

As in any negligence case, the plaintiff in a maritime case bears the burden of proving by a preponderance of the evidence that the defendant's negligence caused the alleged damages. *In re Nagler,* 246 F.Supp.3d at 657; *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206 (2d. Cir. 2009); *Treanor*, 144 F.Supp.3d at 388-89. To establish a claim for negligence, the breach of the duty must be the legal cause of the harm or injury plaintiff suffered. *In re M/V MSC FLAMINIA*, 229 F.Supp.3d 213, 220 (S.D.N.Y 2017). To show legal cause, the breach must constitute a substantial factor in bringing about the injury. *Id*.

> …Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause. Given the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established. To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury. Plaintiff need not demonstrate, however, that the precise manner in which the accident happened, or the extent of injuries, was foreseeable.

*Zerega Ave. Realty Corp. v. Hornbech Offshore Transp., LLC,* 882 F.Supp.2d 496, 530 (S.D.N.Y. 2012) quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314–15 (1980); *see also Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, n.2 (2d. Cir. 2013). Thus, a claimant must demonstrate the breach played a substantial role in causing the damage, or that the owner's negligence was the "cause-in-fact" or "but-for" cause of the injury. *In re*

*Treanor*, 144 F.Supp.3d 381 (E.D.N.Y. 2015); *se*e *Petit v. Celebrity Cruise, Inc.*, 153 F. Supp. 2d

240, 253 (S.D.N.Y. 2001); *Quam v. Mobil Oil Corp.*, 496 F. Supp. 986, 988 (S.D.N.Y. 1978).

Here, Katz testified that after the grounding of the Vessel in shallow waters, he shut the

Vessel's engine off.  Eventually, Katz called Sea Tow for help and waited for assistance.  Given

the lack of daylight, weather conditions and growing anxiety amongst the passengers, Katz took

a judgment call to maneuver his Vessel towards the Beach using waves.  *See* Katz's Responses

to Jellineks' Requests for Responses to Written Interrogatories, Ex. B ¶10.  Up until this point,

none of the passengers including the Jellineks sustained any injuries.

As the Vessel approached the Beach, it was almost capsized, and some passengers started

jumping off while it was moving and was merely four (4) feet away from the beach, citing

anxiety and panic concerns.  While the other passengers jumped off after the Vessel came to a

halt.  It was during this point when the Vessel was at/near the Beach when the Jellineks jumped

off and sustained injuries.

According to the Jellineks, the passengers and Katz found themselves in an emergency

situation due to Katz's negligence and that as a result of the grounding of the Vessel, everyone

aboard was forced to jumped off without receiving any instructions from Katz on how to exit the

Vessel.  Katz' Mot. at 1; Jellineks Mot. at 2.  According to Katz, the Jellinek's injuries were the

direct result of improperly jumping off the Vessel, and not due to the initial grounding of the

Vessel.  Katz' Mot. at 1.

It is clear that the Jellinkes' injuries were the result of jumping off the Vessel at the

Beach.  As to whether grounding of the Vessel was a substantial factor that caused the Jellineks'

injuries, it is evident that the Vessel's grounding led to engine damage that led to the Vessel

being almost capsized.  However, Mrs. Jellinek's injuries were ultimately caused when she

13

disembarked from the Vessel, and allegedly landed in sand and shallow waters. As to Mr. Jellinek, he claims that he was thrown from the beached Vessel due to the Vessel bucking up from the sudden movement of the waves. *See* Claimants' Rule 56.1 Statement of Material Facts ¶ 135.

Such evidence, therefore, presents a genuine factual question as to what extent, if any at all, the grounding became the legal and ultimate cause of the Jellineks' injuries. As such, the court must allow the fact-finder to determine the level of causation played by Katz's alleged failure to operate the Vessel safely. *See. e.g.*, *Turner v. Niagara Frontier Transp. Authority*, 748 F. Supp. 80 (W.D.N.Y. 1990); *Juliussen v. Buchanan Marine, L.P.*, Civil Action No. 08 Civ. 1463(DCP), 2010 WL 86936 at 15 (S.D.N.Y. Jan. 7, 2010)

Thus, this Court determines the Jellineks' Motion and Katz's Cross- Motion for Summary Judgment should be denied because that there is a genuine issue of fact as to whether Katz's alleged breach of duty caused the Jellineks' injuries.

### 4. No Presumption of Negligence Applies

The Jellineks argue that the grounding of the Vessel creates a presumption of negligence against Katz. Katz argues that no such presumption applies.

The law in this circuit is not clear as to whether the grounding of a vessel creates a presumption of negligence. However, in another maritime negligence action involving damage claims due to grounding, it was held that mere grounding does not per se, establish a rebuttable presumption of negligence against the party allegedly responsible for the casualty. *Nissho-Iwai American Corp. v. M/T GRAND DAY*, No. 77 Civ. 1914 (CBM), 1980 WL 6688496 (S.D.N.Y. Jul. 4, 1980) (holding that for damage claims for the grounding of a tow, mere grounding does not establish a rebuttable presumption of negligence against the party allegedly responsible for

14

the casualty).  "As in ordinary common law negligence, the party claiming negligence must introduce independent proof of negligent conduct by a fair preponderance of the credible evidence." *Id*.; *see also Stevens v. The Vessel White City,* 285 U.S. 195, 202 (1932).

Thus, this Court respectfully recommends that Katz should not be presumed to be negligent in grounding his Vessel.

### B.  Privity or knowledge—step-two analysis

The Limitation Act limits a ship owner's liability only when the owner is sued "for the acts of the master or crew done without [the owner's] privity or knowledge." *Nagler*, 246 F.Supp.3d at 660; *Mediterranean Shipping Co. S.A. Geneva v. POL–Atl*., 229 F.3d 397, 402 (2d Cir. 2000) (quoting *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264, (1933)).  The term "privity or knowledge" is a term of art that connotes "complicity in the fault that caused the accident." *In re Messina*, 574 F.3d 119, 126 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Blackler v. F. Jacobus Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957)).

Privity or knowledge "exist[s] where the owner has actual knowledge, or could have and should have obtained the necessary information by reasonable inquiry or inspection." *Mediterranean Shipping*, 229 F.3d at 402 (citation omitted).  It requires more than a showing of negligence on the part of the vessel owner.  *Treanor*, 144 F.Supp.3d at 381.  This defense fails when the owner personally participates in the negligent act or when an owner has actual or constructive knowledge of the dangerous condition.  *Id*.; *Otal Investments*, 673 F.3d at 115 "'Privity or knowledge' can be actual or constructive, which "turns on the facts of particular cases." *Coryell v. Phipps*, 317 U.S. 406, 411 (1943).  Either way, the term usually implies some degree of culpable participation or neglected duty on the shipowner's part.  *Treanor*, 144 F.Supp.3d at 381.

"Some Circuit Courts have held that where an owner is operating his own vessel at the time of the alleged negligent act, he is necessarily charged with privity or knowledge of that act." *Nagler*, 246 F.Supp.3d at 661; *see Joyce v. Joyce*, 975 F.2d 379, 385 (7th Cir. 1992); *Hercules Carriers, Inc. v. Claimant State of Florida*, 768 F.2d 1558, 1563–64 (11th Cir. 1985); *Tittle v. Aldacosta*, 544 F.2d 752, 756 (5th Cir. 1977).  Although this rule is not stated in the text of the Limitation Act, it stems from the reasoning that "when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation, therefore he is not entitled to limitation for accidents arising from his negligence." *Fecht v. Makowski*, 406 F.2d 721, 722 (5th Cir. 1969).  Numerous courts have followed this logical premise.  *See, e.g., In re Archer*, 20 F.Supp.3d 1166, 1170 (D. Colo. 2014); *In re Martin*, 18 F.Supp.2d 126, 128–29 (D. Mass. 1998); *In re Cirigliano*, 708 F.Supp. 101, 104 (D.N.J. 1989); *Complaint of Ingoglia*, 723 F.Supp. 512, 515 (C.D. Cal. 1989).

In the Second Circuit, if the owner, "by prior action or inaction set into motion a chain of circumstances which may be a contributing cause even though not the immediate or proximate cause of a casualty, the right to limitation is properly denied." *Nagler*, 246 F.Supp.3d at 661; *Messina*, 574 F.3d at 127 (internal quotation marks omitted) (quoting *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1158 (2d Cir. 1978)); *Complaint of Interstate Towing Co.*, 717 F.2d 752, 754 (2d Cir. 1983)).  Thus, "[i]n the case of individual owners, it has been commonly held or declared that privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury." *Id*. at 126 (quoting *Coryell*, 317 U.S. at 411).  "

Here, it is undisputed that Katz was at the helm of his own Vessel when the grounding occurred, and he was therefore in privity with himself.  *See In re Kessler*, 2009 AMC 1355

16

(E.D.N.Y. 2009). *See Treanor*, 144 F.Supp.3d at 381 (This defense fails when the owner personally participates in the allegedly negligent act ... (citation omitted); *see also Nagler*, 246 F.Supp.3d at 661 (where an owner is operating his own vessel at the time of the alleged negligent act, he is necessarily charged with privity or knowledge of that act); *Coryell*, 317 U.S. at 411-412; *Fecht v. Makowski*, 406 F2d 721, 722 (footnote no. 4) (5th Cir. 1969) (in denying limitation because there was no lack of privity: "In the present case the owner was not only on board the vessel but was operating it."); *Matter of Lopez-Castro*, 2006 WL 8433274, at 4 (S.D. Fla. 2006) (Petitioner, the owner and operator of the vessel cannot show a lack of "privity or knowledge" with respect to his own actions ...).

Thus, Katz was in privity with himself when he was operating his Vessel.

## V.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Jellineks' Motion for Summary Judgment be denied, and Katz's Cross-Motion for Summary Judgment be denied because there are issues of fact as to whether Katz's actions were reasonable under the given circumstances, and whether his alleged breach of duty caused the Jellineks' injuries.

## VI.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections.  Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at 30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:  Central Islip, New York
        July 13, 2022